♦Hitchcock, J.
The several facts of this case, as exhibited in the bill of exceptions, are that William B. Lupton, in the year 1815, died seized of the premises in controversy. On September 20, 1832, Elisha E. Lupton, Cyrus C. Lupton, and William H. Lupton, all of Baltimore, in the State of Maryland, and heirs of said William B. Lupton, conveyed the same land to Peter Kline, of Trumbull county, by deed duly executed. The plaintiff in error claimed title under conveyances from Kline. At the time of the conveyance to Kline by the Luptons, CyruR C. and William H. were infants, within the age of twenty-one years.
The defendant in error claimed title under a deed executed to his lessee, by Cyrus C. and William H. Lupton, on April 15, 1843, conveying to him their interest in the premises. He also gave evidence as to the consideration paid by Kline, and conducing to prove that payment was made to the brother, who was of full age ; and further, that his grantors were citizens and residents of the State of Maryland.
In order to ascertain whether the court of common pleas committed any error in the charge complained of, it will be necessary to examine particularly what that court was requested to charge, and what they did actually charge.
1. The court was requested to charge “ that if a person under the age of twenty-one years, but above the age of discretion, and apparently twenty-one years of age, represents himself to be of that age, and thereby induces another person to purchase land from him, take a conveyance, and pay the purchase money, or part of it; the party making such representations is estopped from claiming back such land and proving that he was not of ago, if the purchaser, believing such statement, acted upon it, paid the *154 purchase money accordingly, and has in his conduct been perfectly fair in the transaction; which instruction the court refused to give, but charged that such was not the law.”
It will be seen from an examination of the bill of exceptions that no evidence has been given to the jury conducing to prove *that the two younger Luptons, or either of them, had, at the time of the conveyance to Kline,-represented themselves as being' of full age, thereby inducing him to purchase the land, nor that he acted upon any such belief. This, then, was a mere abstract proposition, entirely out of the case; and if the court were mistaken upon the point of law, it would make no difference in the result. Under such circumstances we never interfere with the judgment of an inferior court. We would not be understood as saying that here was any mistake; but if there was, it was in a matter upon which the plaintiff had no right to ask the instruction of the court.
2. The court were next asked to charge the jury, “that the purchase by Welch, and receiving a deed from persons out of possession, of lands in the actual adverse possession of persons claiming title, is an act of champerty and maintenance, illegal and void.”
This instruction the court refused, and charged that such was not the law.
The question here presented is not one which now comes before the court for the first time. It is well known that, in England, a sale and conveyance of land by a person out of possession of land, the same lands at the time being in possession of another, claiming title, would be void, as being against the policy of the law. Whether this is a principle of the common law, or whether it is based upon some statute, is a question which has been much controverted. But this is a matter of little consequence, so long as such is the law. In many, probably in most of the states of this Union, the same principle prevails; but in this state the decisions have, from the earliest period of our judicial history, been different, and such sales and conveyances have been held to bo valid. This identical question was belore this court in the case of Hail et al. v. Ashley et al., 9 Ohio, 96; and the title acquired under such circumstances was held to be good. The case referred to is the first brought before the court in bank, in which this question was agitated, and the decision was merely in affirmance *of what was understood to be the rule of law, as estab *155 lished by frequent determinations on the circuit. Now, I have no hesitation in saying that, in my opinion, the rule contended for by plaintiff’s counsel would be beneficial, and highly conducive to the public interest. It would prevent the practice of purchasing doubtful titles. It might interfere with the interest of keen-sighted speculators, who make it a business to hunt up and purchase in such titles, but it could do no injury to the honest man. .But although such is my opinion, still, acting in a judicial capacity, I can not consent to change the rule. Such change would interfere with a multitude of land’titles heretofore acquired, and acquired, too, with a knowledge Of the law as expounded by tho court. But there is a body which can apply a remedy which shall operate hereafter; that body is the general assembly. And to me it is a matter of surprise that we have not an act upon our statute books, declaring void sales made under the circumstances referred to by counsel in their second request to the court. But until some statute of the kind is enacted, we feel ourselves bound by the law as heretofore settled.
3. and 4. The third and fourth instructions requested of the court, were, in substance, that the execution by Cyrus C. Lupton and 'William H. Lupton, of tho deed to the defendant in error, did not, on their part, amount to a disaffirmance of the former deed to Kline, by them executed while infants. This the court refused to do, and held that such was not the law.
Much has been said in the books with respect to the deeds of infants conveying land, whether they were void or merely voidable. The better opinion, as we believe, is, that they are merely voidable; and it was so held in the case of Drake and wife v. Ramsey ot al., 5 Ohio, 251. Such being tho law, the deed of an infant will hold good until some act has been done by him to avoid it, although there has been no express act of affirmance after his arrival at full age. But what the act of disaffirmance shall be, is a matter of more doubt. *If it be one of equal solemnity with the original act of conveyance, it would seem to be sufficient. Thus, in England, if a feoffment be made by an infant, he can only avoid it by entry. He must be in possession in order to make the feoffment; for that is not done without livery of seizin. He must then again enter to avoid the feoffment; and perhaps this alone would not be sufficient. But in this country, and especially in this state, this mode of conveyance is not adopted. Lands here *156 are conveyed by deed of bargain and sale, and deeds of other descriptions. Livery of seizin is not known in practice, and is entirely unnecessary.
In the case of Drake and wife v. Ramsey et al., before referred to, the judge, in delivering the opinion of the court, says : “ Some of the books apparently suppose that the act of avoidance must be of equal solemnity with the act of grant; but I can not find it to be expressly decided, except in cases of feoffments, where a peculiar feudal principle renders it necessary. We believe that an entry, suit, or action, a subsequent conveyance, an effort to restore the parties to their original condition, or any act unequivocally manifesting the intention, would render the evidence effectual,” etc. It is said, however, that this question did not properly arise in that case, and, therefore, that this dictum of the court can not be relied upon as authority. It was the deliberate opinion of the court, in a case where one of the principal questions was, what act would amount to the avoidance or disaffirmance of a deed executed by an infant. True, the act relied upon in that case, and which was held to be sufficient, was the commencement of an action of ejectment. That a subsequent conveyance would amount to a disaffirmance, has been decided in the Supreme Court of New York and of the United States. 11 Johns. 541; 14 Johns. 128; 10 Pet. 59. In fact, I can not well conceive what would be a more decisive act of disaffirmance than the conveyance of the same land to another person. It would be conclusive evidence that the person making such conveyance, did not intend to be bound by his deed made in infancy.
*5. The court was next requested to charge the jury, “that lapse of time less than twenty-one years, after the minor comes of age, may furnish evidence of acquiescence, and confirm the title.” In response to which request, the court charged, that the lapse of time less than twenty-one years was hot of itself evidence of acquiescence, but might be evidence of such acquiescence in connection with other facts and circumstances.
In this particular, I understand the court to have stated, in substance, that lapse of time alone would not amount to an affirmance on the part of the grantor of the deed executed in infancy, unless that lapse of time amounted to twenty-one years. Such was the opinion of this court, as expressed in the case of Drake and wife v. Ramsey. But in that case, as in this, the- court held, that the *157 lapse of a less period of time, taken in connection with other circumstances, might amount to a confirmation. The idea might have been conveyed in different language, but I do not see wherein the court violated any principle of law in this particular.
6. The next request made to the court, was to charge, “ that the right to disaffirm a deed made during minority, may be extinguished by an act done under a knowledge of his right, which demonstrates a willingness to be bound by the contract; or, by continuing after acquiring such knowledge, to enjoy any benefit, profit, or privilege, under the contract, after they attained full age.” The court admitted such to be the law, but added, “that retention of the purchase money in this ease was not, of itself, an act demonstrating a willingness to be bound by the contract; and that a minor was not bound to return the purchase money before dis-affirming his deed made during minority.”
It can hardly be supposed that any one will seriously contend, that an infant who has conveyed land during infancy, can not dis-affirm his contract before returning the money which he has received upon the contract; nor that the retention of the money is demonstrative evidence of a willingness to be *bound by the contract. If I am correct in this, then it follows that there was nothing erroneous in the opinion expressed, in itself considered. It was not a violation of law. Whether it was proper, under the circumstances, to make the statement, is another question ; and in order to solve this, it is necessary to look to the bill of exceptions. From that, it appears that the infants had not “received any benefit, profit, or privilege,” from the contract, —neither before nor after they arrived at full age — except the purchase money; and it is left doubted whether they have even received that much. The court were pressed to say, that the grantor of a deed made during infancy, by continuing after acquiring a knowledge of his rights, “ to enjoy any benefit, profit, or privilege, under the contract,” after arriving at full age, would confirm the deed; and this, too, in a case where the facts showed that the only “ benefit,profit, or privilege” was the retention of the purchase money. The court admitted the correctness of the general proposition, qualifying it, however, by saying, in substance, that the retention of the purchase money was not such a “ benefit, profit, or privilege ” as would be equivalent to a confirmation of the contract; or, in other words, that it is not necessary that a person who has con *158 veyed his land by deed during infancy, should, as a condition precedent, refund the purchase money before he disaffirms his contract of conveyance. I do not perceive that there is anything wrong in this.
V. Counsel for plaintiff in error next requested the court to charge the jury, “that the silence of the party after coming of age, might be evidence of acquiescence and confirmation, although for a less period than twenty-one years after coming of age.”
This is but a reiteration, in substance, of the request which had been before made, and which is noted on the bill of exceptions as being the fifth. The. words are not identical, but there is no difference in substance.
The court also responded as before, stating, “ that silence for a less period than twenty-one years, was not, in itself, unless connected with other facts and circumstances, evidence of *assont to, or confirmation of, a deed made during minority.”
As to these three last points, I do not see that there was anything substantially wrong. The ideas might have been conveyed in different language, and, possibly, in language more appropriate. The whole substance and effect of it is this, that where an infant convoys land by deed, although the contract is voidable, and must be disaffirmed after he arrives at full age, yet, that he has the length of time allowed by the statute of limitations, within which to disaffirm. But if, in the meantime he has done other acts which show a manifest intention to confirm the deed so executed, those acts, taken in connection with the lapse of time, although that bo less than twenty-one years, will amount to a confirmation. It was so held by this court,in the case of Drake and wife v. Ramsey, and so held in the cases cited from Johnson’s Reports.
The only other matter ruled by the court upon one of these three last points, was, that an individual who would disaffirm a conveyance made by him during infancy, need not, as a condition precedent to the disaffirmance, refund,'or offer to refund, the purchase money. These are not the words, but it is the substance and effect of the ruling.
Upon the whole, we see nothing erroneous in the charge of the court complained of, and the judgment is affirmed.
Judgment affirmed.